UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICHAEL L. HILLS, SR.                                         CIVIL ACTION

VERSUS                                                         NO. 17-46-RLB[1]

COMMISSIONER OF SOCIAL SECURITY

---

RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Michael L. Hills, Sr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-6), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal is **DISMISSED with prejudice**.

I.  PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits (Tr. 92-93) on June 30, 2014, alleging that he became disabled on April 1, 2013 because of a disabling condition, namely gout, arthritis, fibromyalgia, abnormal immunological finding in serum positive ANA, joint pain, elevated C-reactive protein (CRP), other malaise and fatigue, and unspecified vitamin D

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 6), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

deficiency. (Tr. 115). Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 29-52) before issuing an unfavorable decision on October 21, 2015. (Tr. 15-28). Plaintiff's request for review of the ALJ's decision (Tr. 12-14) was denied by the Appeals Council on December 8, 2016. (Tr. 1-6). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable

3

of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act on March 31, 2014.

2. Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of April 1, 2013 through is date last insured of March 31, 2014.

3. Plaintiff had the following severe impairments: occasional gout flares with pain and joint swelling.

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.

5. Plaintiff had the residual functional capacity to perform the full range of medium work.

6. Plaintiff was capable of performing past relevant work as a tank cleaning supervisor, tank cleaner, and cleaner.

7. Plaintiff was not under a disability from April 1, 2013 through March 31, 2014.

## IV. DISCUSSION

Plaintiff's first argument is that substantial evidence does not support the ALJ's finding that his fibromyalgia was not a medically determinable impairment. (R. Doc. 12 at 3). In support of his position, Plaintiff suggests that the ALJ neglected to consider all of the relevant criteria within the proper legal standard, SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The

4

Commissioner responds that Plaintiff failed to meet his burden of establishing that other disorders that could cause his fibromyalgia symptoms were excluded. (R. Doc. 14 at 5).

Second, Plaintiff argues that the ALJ should have accounted for his second hypothetical to the VE in his ultimate RFC findings, which would have led to a determination of disability. (R. Doc. 12 at 6-8). The Commissioner responds that an ALJ is not required to rely on a VE's response to a hypothetical that the ALJ ultimately finds to be unsupported by the evidence. (R. Doc. 14 at 7-8).

Lastly, Plaintiff suggests the ALJ erred in finding that he had the ability to perform his past relevant work because the ALJ neglected to analyze the mental demands in accordance with SSR 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386 (Jan. 1, 1982). The Commissioner counters that the ALJ properly included the mental demands of Plaintiff's past relevant work in his analysis. (R. Doc. 14 at 9).

### A. Plaintiff's Medically Determinable Impairments

In defining a medically determinable impairment ("MDI"), the SSA has provided the following guidance:

> To be found disabled under the law, an individual must have a medically determinable severe impairment, i.e., an impairment which has demonstrable anatomical, physiological or psychological abnormalities. Such abnormalities are medically determinable if they manifest themselves through medical evidence consisting of symptoms, signs, and laboratory findings. Symptoms alone, however, do not constitute a basis for finding a medically determinable impairment.

SSR 82-58, 1975-1982 Soc. Sec. Rep. Serv. 771, 1982 WL 31378, at *1 (Jan. 1, 1982). Specifically with regard to fibromyalgia, the condition at issue herein, SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012), provides that the Administration "will find that a person has an MDI of FM [fibromyalgia] if the physician diagnosed FM and provides the evidence we describe

in section II.A. or section II.B, and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."

The first set of criteria, II.A., requires (1) a history of widespread pain; (2) at least 11 positive tender points on physical exam; and (3) evidence that other diseases that could cause the symptoms were excluded. SSR 12-2p, 2012 WL 3104869 at *2-3. The second set of criteria, II.B., requires (1) a history of widespread pain; (2) repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions; and (3) evidence that other diseases that could cause the symptoms were excluded. SSR 12-2p, 2012 WL 3104869 at *3. Put simply, the existence of a diagnosis of fibromyalgia in a record before the ALJ does not necessarily equate to the existence of a medically determinable impairment. The record must contain all three prongs of at least one of the two paths laid out in SSR 12-2p.

"The burden of providing the existence of a medically determinable impairment, part of the analysis at the second step, is on the Plaintiff." *Mayeux v. Comm'r of the Soc. Sec. Admin.*, 2018 WL 297588 at *4 (M.D. La. Jan. 4, 2018) (citing *Rowe v. Colvin*, 2017 WL 3821473, at *8 (M.D. La. Aug. 31, 2017)). Here, Plaintiff argues that the ALJ gave "due consideration… to the record evidence of the number of positive tender points," such that the ALJ's analysis under II.A. was adequate, but failed to consider the entirety of II.B. (R. Doc. 12 at 4). Specifically, Plaintiff argues that the ALJ did not address the second prong, the requirement that there be repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions. (R. Doc. 12 at 4). The Commissioner counters that, because the ALJ concluded that "the record does not include any evidence of exclusion of other disorders that could cause the symptoms, signs, or co-occurring conditions" (Tr. 21), and the Plaintiff makes no argument that the record establishes otherwise, the Plaintiff has failed to establish any error on the part of the ALJ. (R. Doc. 14 at 4-5). In Reply, the Plaintiff suggests there is "ample evidence of the exclusion of any alternative

6

source(s) as the basis for claimant's fibromyalgia signs/symptoms." (R. Doc. 15 at 1). Plaintiff posits that by listing fibromyalgia as "primary" and gout as "non-primary," gout was excluded as the primary source of pain. (R. Doc. 15 at 2). Plaintiff also asserts that certain test results establish an exclusion of other diagnoses. (R. Doc. 15 at 2).

The ALJ concluded that the "record reflects a diagnosis of fibromyalgia by an acceptable medical source," but goes on to conclude that "the record does not include evidence of at least 11 positive tender points on physical examination or of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions." (Tr. 21). Lastly, the ALJ concludes that "the record does not include any evidence of exclusion of other disorders that could cause the symptoms, signs, or co-occurring conditions." (Tr. 21). These statements are inclusive of all three factors for each path such that Plaintiff's argument that the ALJ addressed positive tender points but failed to consider manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions is incorrect. The question then becomes, therefore, whether substantial evidence supports the ALJ's finding and whether the Plaintiff has met his burden.

Since the first and third factors are identical for both paths (II.A. and II.B.), an absence of either the first or third factors necessarily results in an absence of fibromyalgia as an MDI. In other words, should substantial evidence support the ALJ's finding that "the record does not include any evidence of exclusion of other disorders that could cause the symptoms, signs or co-occurring conditions," whether the ALJ analyzed the second prong of the second path is irrelevant. Plaintiff points to two events in the record. First, records from Plaintiff's visits at Ochsner Health Center, where fibromyalgia was noted to be the "primary" diagnosis. (R. Doc. 15-1 at 3; Tr. 232, 233). Second, Plaintiff argues that certain diagnostic test results in the record reflect an exclusion of diagnoses other than fibromyalgia. (R. Doc. 15-1 at 4; Tr. 177).

7

Plaintiff's suggestion that a diagnosis of fibromyalgia as "primary" necessitates a conclusion that any other diagnosis listed is not only secondary, but constitutes proof that Plaintiff's symptoms are a result of fibromyalgia to the exclusion of any other diagnosis listed, is unsupported and misplaced. (Tr. 229, 232, 233, 241). That is to say, that fibromyalgia is recorded as a primary diagnosis at certain points of the record is not alone sufficient to conclude that all other diseases or conditions that could cause the symptoms were excluded. In addition, while the Court notes there are instances in which fibromyalgia is listed as the primary diagnosis, there are ample instances where it is not. Many records list various other diagnoses ahead of fibromyalgia. (Tr. 234, 240, 245, 261, 274, 310, 312, 314). There are also numerous records where fibromyalgia is not listed at all, including a December 10, 2013 visit to Ochsner Health wherein gout was listed as primary. (Tr. 228; *see also* Tr. 175, 200, 215, 243, 245, 246, 248, 311).

The timeline of diagnoses, furthermore, does not suggest an evolving process of testing and diagnosis culminating in a consistent recognition of fibromyalgia by providers to the exclusion of other prior diagnoses. For example, gout and multiple joint pain are diagnosed on July 29, 2013 in the absence of fibromyalgia (Tr. 175), and fibromyalgia is the primary diagnosis on December 23, 2013 (Tr. 231). But, as late as June 15, 2015, gouty arthritis is listed as the primary diagnosis with a secondary diagnosis of fibromyalgia. (Tr. 261).

Plaintiff points to a notation in the record for his July 29, 2013 visit of diagnostic testing results of "Negative ANA lupus panel negative rheumatoid factor CCP." (R. Doc. 15-1 at 4; Tr. 177). There are also several points in the record in which test results reflected a positive ANA, all of which post-date the negative ANA Plaintiff references. Plaintiff's negative ANA reference comes from a July 29, 2013 visit at Baton Rouge Hospital. (Tr. 177). Positive ANA results were recorded on at least June 9, 2014 (Tr. 292), June 26, 2014 (Tr. 282), March 13, 2015 (Tr. 254), and June 15, 2015 (Tr. 261). Additionally, Plaintiff does not refer to anything in the record that

rules out gout or gouty arthritis as the source of his signs or symptoms, and the ALJ concluded that the only medically determinable severe impairment supported by the record was "occasional gout flares with pain and joint swelling." (Tr. 20).

Lastly, Plaintiff provides no statutory, regulatory, or jurisprudential support for his theory that a patient's symptoms are, by definition, attributable to his primary diagnosis to the exclusion of all others. Were Plaintiff's diagnoses not so related in symptoms as gout and fibromyalgia, the flaw in this argument would be even more apparent. For example, were a patient to have a primary diagnosis of fibromyalgia, along with a non-primary diagnosis of diabetes, elevated glucose would not be attributed to fibromyalgia. Where various signs and symptoms are potentially attributable to more than one of a claimant's diagnoses, it is difficult, if not impossible, to determine exactly which signs and symptoms are attributable to which diagnosis without clear evidence in the objective medical records. Here, substantial evidence does not exist excluding diagnoses – gout, in particular – to the extent necessary to find that the ALJ committed error in concluding that fibromyalgia was not a medically determinable impairment.

At a minimum, there is continuous evidence in the record of diagnoses of both gout and fibromyalgia, inconsistently assigning either one as primary, and a lack of test results ruling out other diagnoses that could cause Plaintiff's signs or symptoms such that it is impossible for the Court to conclude that the ALJ erred in finding that fibromyalgia was not a medically determinable impairment. Substantial evidence that other diseases that could cause the symptoms were excluded does not exist. As a requirement for both prongs of the analysis for determining whether fibromyalgia is a medically determinable impairment, Plaintiff's argument is, therefore, without merit.[2]

---

[2] Although the ALJ did not find fibromyalgia to be a medically determinable, severe impairment, he did find at least one severe impairment, and considered all of his functional limitations in the RFC analysis, in particular noting "constant pain in his hands, legs, knees and back," difficulty walking, problems with his wrists, and stiffness. (Tr.

**B.     The VE's Response to the ALJ's Hypothetical**

"An ALJ is not required to consider the response to 'a hypothetical question composed of assumptions subsequently found unsupported by medical evidence.'" *Dunn v. Berryhill*, 2017 WL 2841680, at *5 (W.D. Tex. June 30, 2017) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)). *See also Siewert v. Colvin*, 2016 WL 7478968, at *11 (M.D. La. Dec. 29, 2016). Plaintiff contends that the ALJ erred in not adopting the VE's response to the ALJ's second hypothetical. (R. Doc. 12 at 7). The Commissioner responds that substantial evidence, including the "VE's testimony based on a supported hypothetical question that included all of Plaintiff's established limitations," supports the ALJ's step four decision. (R. Doc. 14 at 7). The Commissioner also suggests that the ALJ did not err in rejecting the VE's response to the second hypothetical because an ALJ is not required to rely on a response to a hypothetical that contained functional limitations not 'recognized by the ALJ.'" (R. Doc. 14 at 8).

The ALJ posed two hypotheticals to the VE. The first was whether a hypothetical individual of the Plaintiff's age, education, and past relevant work "could perform work at the medium exertional level." (Tr. 50). The VE responded that all of Plaintiff's past relevant work would be appropriate, as generally and actually performed. (Tr. 51). The ALJ's second hypothetical was the same as the first, with the addition of three 15-minute breaks during the workday along with the normal lunch break and two 15-minute breaks. (Tr. 51). The VE responded that such a hypothetical individual could not perform any of Plaintiff's past relevant work. (Tr. 51). Ultimately, the ALJ found that Plaintiff had the RFC to perform the full range of medium work. (Tr. 21-24).

---

22-23). Thus, even were the ALJ to have committed error at step two when he concluded that fibromyalgia was not a medically determinable impairment, any physical limitations in the record appear to have been incorporated into the ultimate RFC regardless.

The ALJ did not conclude in his RFC assessment that Plaintiff's functional limitations included a required three 15-minute breaks in addition to the normal lunch break and two 15-minute breaks. The law in the Fifth Circuit is that an ALJ is not required to rely on a VE's response to a hypothetical question composed of assumptions subsequently found unsupported by medical evidence. *See Masterson v. Barnhart*, 309 F.3d 267 (5th Cir. 2002). Plaintiff's argument is, therefore, without merit, and the ALJ's decision will not be overturned on this ground.

To the extent that Plaintiff is arguing that the ALJ's RFC should have included a limitation that he required three additional 15-minute breaks, substantial evidence does not support that contention. Plaintiff suggests that these additional breaks are "a reasonable requirement and need 'recognized' by the ALJ, given plaintiff's continual pain throughout his body, his co-occurring conditions, and his medical signs as shown in the medical records." (R. Doc. 12 at 7). First, a need for extra breaks was not recognized by the ALJ. As laid out above, the ALJ's RFC did not include a need for three additional 15-minute breaks, and a hypothetical posed to a VE at an administrative hearing is not a recognition of a claimant's limitations. Should the ALJ ultimately include certain limitations in an RFC that he posed to a VE, that perhaps would constitute a recognition of the propriety of those functional limitations, but that is not the case herein. Second, there is no evidence that would support a finding that Plaintiff's functional limitations include a need for an additional three 15-minute breaks.

During a July 29, 2013 visit at Baton Rouge Hospital, Plaintiff reported "morning stiffness Less than 30 minutes." (Tr. 176; *see also* Tr. 204). In May of 2015, Plaintiff reported morning stiff of "about an hour [or] so" on a regular basis. (Tr. 255). On December 12, 2013, however, Plaintiff reported "No Morning stiffness of the joints." (Tr. 190). Plaintiff does not, however, testify about any need to rest intermittently during a day, nor do any medical records

11

suggest a need for intermittent breaks during a day. Therefore, insofar as Plaintiff argues that the ALJ's RFC should have incorporated the same functional limitations posed in the ALJ's second hypothetical – the need for three additional 15-minute breaks throughout a typical workday – substantial evidence does not support that argument.

### C. Mental Demands of Plaintiff's Past Relevant Work

It is the Plaintiff's burden at step four to establish that he cannot perform his past relevant work. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Nevertheless, SSR 82-62, 1975 Soc. Sec. Rep. Serv. 809, 1982 WL 31386, at *4 (Jan. 1, 1982), requires that, where an ALJ determines that a claimant retains the RFC to perform his past relevant work, the decision must contain the following: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Plaintiff's position is that the ALJ failed to make specific findings with regard to the mental demands of his past relevant work in accordance with SSR 82-62. (R. Doc. 12 at 8). The Commissioner responds that the ALJ properly accounted for the mental demands of Plaintiff's past relevant work when he explained that he compared Plaintiff's RFC "with the physical and mental demands" of his past relevant work. (R. Doc. 14 at 9).

The case of *Bennett v. Astrue*, 2010 WL 308747, at *4-5 (N.D. Tex. Jan. 27, 2010), is instructive on this point. There, the plaintiff argued that the ALJ failed to consider the mental limitations of his past relevant work, relying in part on the case of *Latham v. Shalala*, 36 F.3d 482 (5th Cir. 1994). *Bennett*, 2010 WL 308747 at *4. The *Bennett* court distinguished the *Latham* case, however, noting that "in Bennett's case, the ALJ found no nonexertional impairments." *Bennett*, 2010 WL 308747 at *4. The court stated, "[i]f this finding is supported

by substantial evidence, the ALJ did not commit reversible error by failing to address the mental requirements of Bennett's work." *Bennett*, 2010 WL 308747 at *4.

The same is true here. The ALJ did not find any nonexertional limitations in his step four analysis. The ALJ reviewed the objective medical evidence as well as Plaintiff's reports of pain and Plaintiff's testimony, and its effect on his ability to function. (Tr. 22-23). The ALJ also reviewed Plaintiff's work history. (Tr. 23). From this review and analysis, the ALJ concluded that the Plaintiff retained the RFC to perform the full range of medium work. The ALJ then moved on to the issue of whether, given the RFC assessed, Plaintiff retained the ability to perform any of his past relevant work. (Tr. 24). In so doing, the ALJ reviewed the record and Plaintiff's testimony regarding his past relevant work, as well as the VE's testimony regarding the ability of a hypothetical individual with Plaintiff's RFC to perform Plaintiff's past relevant work. (Tr. 234). The ALJ then concluded, "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. 24).

This analysis comports with the requirements of SSR 82-62, especially given the fact that nonexertional limitations were not raised as an issue at any point in the medical records, or throughout the entirety of the administrative process, up to and including this appeal. In his application for disability, Plaintiff alleges disability due to gout, arthritis, fibromyalgia, abnormal immunological finding in serum positive ANA, joint pain, elevated C-reactive protein (CRP), other malaise and fatigue, and unspecified vitamin D deficiency. (Tr. 115). While there are scarce references to depression in the medical records (Tr. 232, 249), there is no evidence of treatment for any mental impairment, nor is there any evidence of any functional limitations attributable to a mental impairment, and any notation of depression appears to be the exception, not the rule. As late as April of 2015, the medical records note "[n]egative for hallucinations,

13

confusion, sleep disturbance, decreased concentration and agitation. The patient is not nervous/anxious." (Tr. 251).

Without any allegation of any mental impairment as a basis for disability, any functional limitations attributable to a mental impairment, scarce references to depression in the objective medical records, an absence of treatment for any mental impairment, and a lack of testimony by the Plaintiff contradicting any of the foregoing, it simply cannot be said that the ALJ's failure to specifically address mental limitations in his assessment of whether Plaintiff maintained the ability to perform his past relevant work was in error. Plaintiff's argument on this point is, therefore, without merit.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on April 23, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**